Martin James Martinez
1434 Third Street
Suite 3 C
Napa, CA 94559
707-251-9383
Fax:707-251-9386
e:mail: attymary@sbcglgobal.net
Attorney for Plaintiff,
Jose Farias Hernandez

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| JOSE FARIAS HERNANDEZ,<br>　　　　　Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br>U.S. DEPARTMENT OF JUSTICE,<br>DRUG ENFORCEMENT ADMINISTRATION<br>(DEA)<br>　　　　　Defendant | Case Number: C 07 5501<br><br>RESPONSE TO NOTICE AND<br>MOTION FOR DISMISSAL<br><br>Date: June 5, 2008<br>Time: 10: A.M.<br>Place: The courtroom of the<br>Honorable Maria Elena James<br>15th Floor |

*"A District Court is not without the power to fashion*

*a remedy under it's inherent equitable authority*."

In ***United States v. $8,850 in Currency*** 461 U.S. 555 (1983) the Supreme Court citing ***Slocum v. Mayberry***, 2 Wheat. 1, 10 (1817) (Marshall, C.J.) ruled that a claimant is able to trigger rapid filing of a forfeiture action if he desires it. The claimant can file an equitable action seeking an order compelling the filing of the forfeiture action or return of

1

the seized property.

In **Robinson v. United States**, 734 F.2d 735 (11th Cir. 1984) the court of appeal affirmed the district court's use of its equitable power to order return of seized property, notwithstanding pendency of civil forfeiture proceedings. The purposes for which a court may exercise its general equity jurisdiction are two-fold:

(1) to suppress evidence prior to indictment and

(2) to deter unlawful conduct of law enforcement officials through the exclusion of evidence obtained illegally. **United States v. Rapp**, 539 F.2d 1156, 1160, 1161 (8th Cir. 1976).

In essence, this is basis of the plaintiff's complaints to wit: his currency was illegally seized without an indictment, and the deterring of unlawful police conduct by the authorities.    Further, in **United States v. James Daniel Good Real Property,** 510 U.S. 43 (1993) the Supreme Court held that the  ex parte pre seizure proceeding affords little or no protection to the innocent owner.  In issuing a warrant of seizure, the magistrate judge need determine only that there is probable cause to believe that the real property was "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a felony narcotics offense.  Ibid.

Equitable relief is sought by the plaintiff due to the fact the Federal Government is not required to offer any evidence on the question of innocent ownership or other potential defenses a claimant might have.  See: **Austin v. United States,** 509 U.S. 602 (1993)  Nor would that inquiry, in the ex parte stage, suffice to protect the innocent owner's interests.  The *Austin* court reasoned that section § 881 requires  that the Government show probable cause that the subject property was used for the prohibited purpose. The burden then shifts to the property owner to show, by a preponderance of the evidence, that the use was made without his "knowledge, consent, or willful blindness," 21 U.S.C. §§ 881(a)(4)©, see also (a)(7), or that the property was not so used. See §

881(d) (incorporating 19 U.S.C. § 1615).

The government cites *United States v Kama*, 394 F.3d 1237 (2005) in support of their position. This case should be distinguished because in that case, the district court had concluded that it lacked equitable jurisdiction to consider a motion that was based on equitable principles. The appellant had argued only the merits of his motion and failed to address the threshold issue of whether the district court abused its discretion in declining to exercise its equitable jurisdiction. The court of Appeal concluded that he had waived the equitable jurisdiction issue by failing to raise it in his opening brief, or for that matter, by failing to address the issue at all. Here, that is not the case.

In *Kama,* the court opined that his motion to return property was governed by ***Federal Rule of Criminal Procedure 41(g).1.*** Under that rule, a person deprived of his property may move for the property's return in the district court where the property was seized. Although Rule 41(g) is ordinarily used to seek return of property after an indictment is issued, "district courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant." ***Ramsden v. United States***, 2 F.3d 322, 324 (9th Cir.1993) (construing former Rule 41(e)).

These motions are treated as civil equitable proceedings. Thus, a district court can reach the merits of a pre-indictment [Rule 41(g)] motion, by considering the fact the government displayed a callous disregard for the constitutional rights of the plaintiff, he has an individual interest in and need for the property he wants returned, he would be irreparably injured by denying return of the property, and he has no adequate remedy at law for the redress of his grievance. Id. at 324-25(citing ***Richey v. Smith***, 515 F.2d 1239, 1243-44 (5th Cir.1975)).

In summary, if the "balance of equities tilts in favor of reaching the merits" of the Rule 41(g) motion, the district court should exercise its equitable jurisdiction to entertain

3

1  the motion. ***Ramsden***, 2 F.3d at 326.

## *Transfer of the Case to Nevada*

Ordinarily, a plaintiff's choice of forum is entitled to deference. ***Lou v. Belzberg,*** 834 F.2d 730, 739 (9th Cir. 1987).  However, for  the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." ***28  U.S.C. § 1404(a).*** The burden of justifying transfer of venue under § 1404(a) lies with the moving party, who must make a clear and convincing showing that transfer should be made. See ***Matera v. Native Eyewear***, Inc., 355 F. Supp. 2d 680, 687 (E.D.N.Y. 2005);   see also ***O'Brien v. Aecium Mountain,*** Inc., 17 F. Supp. 2d 98, 104 (D. Conn. 1998) (movant's burden to show that the relevant factors "strongly favor" transfer).

Here, it would not be convenient for the plaintiff.  He  chose the forum because although he is a citizen of the republic of Mexico, he has spent considerable amount of time in Napa County.  His family and friends,  who would be witnesses in the case,  are in Napa County.  Ergo, he does have a claim of residence in Napa County. On page four of the complaint for equitable relief, paragraph 3, the plaintiff sets forth the requisite venue in his complaint.  Nevertheless, the government by de facto means,  is seeking discovery of items such as witness identification,  when at this point in the proceedings, they are not entitled to the information.

Factually, he purchased real property in Mexico.  Part of the funds used to buy the real property in Mexico  came from legitimate business transactions in Napa County. He sold the property in Mexico, and when he was arrested he had the funds from the sale in his possession.  He has strong links to the Northern District of California and none to Nevada.  In addition, the Mexican Consulate in San Francisco,  has been contacted to see if they will serve as witnesses in the action on the subject of Mexican law regarding conveyance of real property and the Vienna Convention.  If in fact they agree to serve as

4

expert witnesses, the plaintiff will greatly be harmed due to the distance.

Under the first to file rule, the Northern District of California has original jurisdiction. Moreover, the Northern District of California may issue and cause to be served in the Nevada district such process as may be required to bring before the court the property that is the subject of the forfeiture action. The court is proper because the currency seized can be directly traced to legitimate dealings to the county of Napa, State of California, Northern District of California.

Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule. See, e.g., **United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.,** 920 F.2d 487, 488 (8th Cir.1990) (describing the first-filed rule as "well-established"); **Church of Scientology of Cal. v. United States Dep't of Defense,** 611 F.2d 738, 750 (9th Cir.1979) (noting that the first-filed rule "should not be disregarded lightly").

Moreover, the federal courts require that the party objecting to jurisdiction in the first-filed forum carry the burden of proving "compelling circumstances" to warrant an exception to the first-filed rule. See: **Manual v. Consergys** (11th circuit) 430 F. 3d 1132. **All trade v. Uniweld** (9th Circuit) (1991) 946 F. 2d 662, **Caddle Company v. Whataburger**, 174 F.3d 599 (1999)  Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. See **Save Power Ltd. v. Syntek Fin. Corp.**, 121 F.3d 947, 950 (5th Cir.1997); **West Gulf Maritime Ass'n v. ILA Deep Sea Local** 24, 751 F.2d 721, 728 (5th Cir.1985).

The rule rests on principles of comity and sound judicial administration. See **Save Power,** 121 F.3d at 950; **West Gulf**, 751 F.2d at 728. "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister

5

courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf*, 751 F.2d at 729. The only issue before the *Cadle* court was the district court's decision to dismiss *Cadle's* claims under the first-to-file rule.

The *Cadle* court ruled that the first-to-file rule, was essentially a forward-looking doctrine. Courts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court. Thus, since a second-filed court is not binding the litigants before it to a ruling of the first, there is no reason to examine the jurisdiction of the first-filed court.

Such a requirement would actually undercut the values of economy, consistency, and comity that the rule is designed to maximize: the jurisdictional ruling of the second-filed court would either conflict with a ruling already made, rehash an issue already decided, or trench on a sister court's treatment of the issue before it has been reached there. Because the doctrines approach the problem of inconsistent rulings and judicial economy from different perspectives, different procedures are required for proper operation of the rules. As such, the district court properly declined to accept *Cadle's* suggestion to apply a jurisdictional requirement to the first-to-file rule.

Accordingly, the 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter Corp.*, 125 F.3d at 920. As noted above, "[t]he Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power*, 121 F.3d at 948. Ergo, when alternative venues are provided by statute, the first-to- file rule protects the earlier action at either venue. See: *Sutter* supra 125 . 3d 914 (1997).

### *Conclusion*

Since there are two different district involved in the matter, under the first to file rule, the Northern District of California should resolve the issues. However, if the court is inclined to agree with the government on the issue of dismissal of the complaint, then the plaintiff would request that the court transfer the matter to Nevada for a determination of the issues raised by the government.

Dated:  April 29, 2008

_____
/s/ MARTIN JAMES MARTINEZ
        Attorney at Law
        by electronic filing